AO 472 (Rev. 11/16; DC 1/19) Order of Detention

# UNITED STATES DISTRICT COURT
for the
District of Columbia

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| BRIAN CHRISTOPHER MOCK | ) | Case No.  21-mj-469-RMM |
| | ) | |
| *Defendant* | ) | |

## ORDER OF DETENTION PENDING TRIAL

### Part I - Eligibility for Detention

Upon the

☐ Motion of the Government attorney pursuant to 18 U.S.C. § 3142(f)(1), or
☑ Motion of the Government or Court's own motion pursuant to 18 U.S.C. § 3142(f)(2),

the Court held a detention hearing and found that detention is warranted. This order sets forth the Court's findings of fact and conclusions of law, as required by 18 U.S.C. § 3142(i), in addition to any other findings made at the hearing.

### Part II - Findings of Fact and Law as to Presumptions under § 3142(e)

☐ **A. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(2)** *(previous violator)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the safety of any other person and the community because the following conditions have been met:
  ☐ **(1)** the defendant is charged with one of the following crimes described in 18 U.S.C. § 3142(f)(1):
    ☐ **(a)** a crime of violence, a violation of 18 U.S.C. § 1591, or an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed; **or**
    ☐ **(b)** an offense for which the maximum sentence is life imprisonment or death; **or**
    ☐ **(c)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508); **or**
    ☐ **(d)** any felony if such person has been convicted of two or more offenses described in subparagraphs (a) through (c) of this paragraph, or two or more State or local offenses that would have been offenses described in subparagraphs (a) through (c) of this paragraph if a circumstance giving rise to Federal jurisdiction had existed, or a combination of such offenses; **or**
    ☐ **(e)** any felony that is not otherwise a crime of violence but involves:
      **(i)** a minor victim; **(ii)** the possession of a firearm or destructive device (as defined in 18 U.S.C. § 921);
      **(iii)** any other dangerous weapon; or **(iv)** a failure to register under 18 U.S.C. § 2250; **and**
  ☐ **(2)** the defendant has previously been convicted of a Federal offense that is described in 18 U.S.C. § 3142(f)(1), or of a State or local offense that would have been such an offense if a circumstance giving rise to Federal jurisdiction had existed; **and**
  ☐ **(3)** the offense described in paragraph (2) above for which the defendant has been convicted was committed while the defendant was on release pending trial for a Federal, State, or local offense; **and**
  ☐ **(4)** a period of not more than five years has elapsed since the date of conviction, or the release of the defendant from imprisonment, for the offense described in paragraph (2) above, whichever is later.

AO 472 (Rev. 11/16; DC 1/19) Order of Detention

- ❐ **B. Rebuttable Presumption Arises Under 18 U.S.C. § 3142(e)(3)** *(narcotics, firearm, other offenses)*: There is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the defendant as required and the safety of the community because there is probable cause to believe that the defendant committed one or more of the following offenses:
    - ❐ **(1)** an offense for which a maximum term of imprisonment of 10 years or more is prescribed in the Controlled Substances Act (21 U.S.C. §§ 801-904), the Controlled Substances Import and Export Act (21 U.S.C. §§ 951-971), or Chapter 705 of Title 46, U.S.C. (46 U.S.C. §§ 70501-70508);
    - ❐ **(2)** an offense under 18 U.S.C. §§ 924(c), 956(a), or 2332b;
    - ❐ **(3)** an offense listed in 18 U.S.C. § 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;
    - ❐ **(4)** an offense under Chapter 77 of Title 18, U.S.C. (18 U.S.C. §§ 1581-1597) for which a maximum term of imprisonment of 20 years or more is prescribed; **or**
    - ❐ **(5)** an offense involving a minor victim under 18 U.S.C. §§ 1201, 1591, 2241, 2242, 2244(a)(1), 2245, 2251, 2251A, 2252(a)(1), 2252(a)(2), 2252(a)(3), 2252A(a)(1), 2252A(a)(2), 2252A(a)(3), 2252A(a)(4), 2260, 2421, 2422, 2423, or 2425.

- ❐ **C. Conclusions Regarding Applicability of Any Presumption Established Above**

    - ❐ The defendant has not introduced sufficient evidence to rebut the presumption above, and detention is ordered on that basis, with the evidence or argument presented by the defendant summarized in Part III.C.

    - ❐ The defendant has presented evidence sufficient to rebut the presumption, but after considering the presumption and the other factors discussed below, detention is warranted for the reasons summarized in Part III.

        **OR**

    - ❐ The defendant has not presented sufficient evidence to rebut the presumption. Moreover, after considering the presumption and the other factors discussed below, detention is warranted for the reasons summarized in Part III.

### Part III - Analysis and Statement of the Reasons for Detention

A.  After considering the factors set forth in 18 U.S.C. § 3142(g) and the information presented at the detention hearing, the Court concludes that the defendant must be detained pending trial because the Government has proven:

    - ☑ By clear and convincing evidence that no condition or combination of conditions of release will reasonably assure the safety of any other person and the community.

    - ❐ By a preponderance of evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required.

B.  In addition to any findings made on the record at the hearing, the reasons for detention include the following:

    - ☑ Weight of evidence against the defendant is strong
    - ☑ Subject to lengthy period of incarceration if convicted
    - ❐ Prior criminal history
    - ❐ Participation in criminal activity while on probation, parole, or supervision

- ❏ History of violence or use of weapons
- ❏ History of alcohol or substance abuse
- ❏ Lack of stable employment
- ❏ Lack of stable residence
- ❏ Lack of financially responsible sureties
- ❏ Lack of significant community or family ties to this district
- ❏ Significant family or other ties outside the United States
- ❏ Lack of legal status in the United States
- ❏ Subject to removal or deportation after serving any period of incarceration
- ❏ Prior failure to appear in court as ordered
- ☑ Prior attempt(s) to evade law enforcement
- ❏ Use of alias(es) or false documents
- ❏ Background information unknown or unverified
- ❏ Prior violations of probation, parole, or supervised release

C. **OTHER REASONS OR FURTHER EXPLANATION:**

The defendant's evidence/arguments for release:

See Attachment.

Nature and circumstances of offense:

See Attachment.

The strength of the government's evidence:

See Attachment.

The defendant's history and characteristics, including criminal history:

See Attachment.

The defendant's dangerousness/risk of flight:

See Attachment.

### Part IV - Directions Regarding Detention

The defendant is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. The defendant must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver the defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Date: 06/29/2021

BERYL A. HOWELL
Chief Judge, United States District Court
for the District of Columbia

*United States v. Mock*, 21-MJ-469

**ATTACHMENT TO ORDER OF DETENTION PENDING TRIAL, PART III. C:**
**Consideration of Defendant's evidence/arguments for release and**
**18 U.S.C. § 3142(g) Factors**

(1) **The Nature and Circumstances of the Offense**:

The nature and circumstances of the offense weigh heavily in favor of detention. Defendant is charged with two felonies and two misdemeanor offense, Criminal Compl. ("Compl."), ECF No. 1, based on his alleged offense conduct of not only breaching the security perimeter around the Capitol building and participating in the attack on the Capitol on January 6, 2021—which attack successfully stopped for some period of time the constitutionally mandated process of counting electoral votes and caused the emergency evacuation from the Capitol building of the Vice President, Congressional Members and staff and others legitimately inside the building—but also aggressively confronting and actually physically assaulting two police officers in two separate incidents. *Id.*, Statement of Facts ("SOF") at 1–2, 5, ECF No. 1-1. After breaching security areas with the crowd of rioters to advance to the Lower West Terrace of the Capitol, defendant then placed himself at the front of the mob and proceeded to confront a line of law enforcement officers trying to prevent the mob from entering the Capitol building. *Id.* at 2.

The government has proffered evidence that prior to travelling to Washington, D.C. with his then-girlfriend, defendant expressed the intent to "[f]ight back" in the wake of the November 2020 Election. *Id.* at 9. Defendant also posted exhortations to "Fight back, support those who do, get the hell out of the way or prepare to defend yourself. There has been a storm brewing and it will sweep through this country very soon. Sic Semper Tyrranis!" *Id*. at 9, 13.[1]

---

[1] This Latin phrase, roughly translated to mean "thus always to tyrants," has been used by right-wing supremacist groups, for example, on a sign around the neck of an effigy of the governor of Kentucky during a "Second Amendment" rally in May 2020. *See* Hollie Silverman, *An effigy of Kentucky Gov. Beshear was hung from a tree at the end of a Second Amendment rally*, CNN (May 25, 2020, 3:31 PM), https://www.cnn.com/2020/05/25/us/kentucky-governor-andy-beshear-effigy/index.html.

*United States v. Mock*, 21-MJ-469

While defendant brought and used no weapons at the Capitol on January 6, he faced-off with the police, who were standing in line behind barriers on the Lower West Terrace to bar entry to the Capitol building, and positioned himself at the front of the crowd trying, ultimately successfully, to breach the barriers to swarm the police officers. *Id*. at 2.  Defendant's assaults on the police officers occurred shortly thereafter.

*Defendant's First Assault*. At approximately 2:30 PM, body-worn camera ("BWC") footage shows defendant shoving a United States Capitol Police ("USCP") officer to the ground and, based on screenshots from videoclips showing defendant with raised knee and eyes on the fallen officer, kicking that officer as he lay on the ground, *id.* at 2–3.  Other police officers aided the fallen officer and then the police reorganized their line.  Defendant then approached the police line gesturing widely with his arms and repeatedly, aggressively shouting "Get out! Go!" at the officers.  *Id.* at 4.  Defendant's conduct was so aggressive that another rioter is captured on BWC footage trying to control him by pulling on his arm to bring him away from the police line. *Id.*

*Defendant's Second Assault*.  At approximately 2:34 PM, as the mob advanced even further on the Lower West Terrace, defendant was again at the front of mob directly confronting the line of police officers holding police shields.  BWC footage shows defendant aggressively stepping forward and shoving a second USCP officer with such force that this officer too fell backwards onto the ground.  *Id.* at 5.  This officer has advised that this fall caused the officer to experience "excruciating pain." *Id.* at 6.  Thereafter, defendant picked up at least two riot shields that had been dropped by law enforcement during their retreat from skirmishes with rioters and,

instead of handing the shields back to law enforcement officers for their protection, passed the shields into the crowd for use by rioters. *Id.* at 5–6.

Following the assault on the Capitol, the FBI received tips from at least eight witnesses about defendant's conduct on January 6, 2021. Defendant's then-girlfriend posted on Facebook about "pulling police barricades away for the crowd to get in," *id*. at 8; *id*. at 11 (defendant's then-girlfriend stating on video that "I was pulling the gates away after Brian removed them."). Other witnesses, including Witnesses 7 and 8, told FBI investigators that once defendant returned to Minnesota, he "bragged about beating up cops," *id*. at 12, and that he had "beat the shit" out of a police officer, *id*. Indeed, defendant's own social media postings immediately following the assault proclaimed that he had not been "sure if [he] was going to come home" but that law enforcement, "[w]hen faced with real men, free men, brave men," "fled with fear and tears in their eyes." Gov't's Mot. at 10; Compl. at 12.

*Obstructive Conduct*. Also concerning are defendant's post-January 6 attempts to intimidate his now ex-girlfriend with whom he traveled to Washington, D.C. on January 6, 2021. Defendant, upon seeing publicly-posted FBI photos of himself, warned this ex-girlfriend that he would "make it bad" for her and that he would "make her life hell" if she provided any information to the FBI. Gov't's Mot. at 11. According to defendant's ex-girlfriend, defendant additionally commented something like "I'm warning you, they're going to be after you too, and if you are the one that tipped them off you're going to go down with me" and showed up to her house unannounced more than once after the two broke up and harassed her. *Id*. While the magistrate judge accepted that these threats could be construed as violent and found it "disconcerting" that defendant "communicated with a witness and attempted to prevent her from cooperating with the government," MJ Hr'g Tr. (Jun. 15, 2021) at 74:16–25, ECF No. 12-1, she

ultimately determined that this conduct, which was "obstructive, but not violent," could be "addressed with the application of conditions," *id.* at 74:24–25; id. at 75:9–12, given that defendant "didn't act on any of those communications," the ex-girlfriend "didn't describe any threats of physical violence," and "the [ex-girlfriend] didn't get an order of production [sic] or express to law enforcement that this had been ongoing behavior or that [defendant] had been driving by her home or posting threats on Facebook or any of the things that would take it into a more aggravating nature," *id.* at 75:1–9.  The ex-girlfriend's decisions not to seek an order of protection or to furnish law enforcement with the information about the defendant until *after* defendant was arrested on June 11, 2021 can also be viewed as defendant's threats effectively giving his ex-girlfriend a credible fear of informing on him, particularly since she reported that defendant "showed up unannounced at her house more than once and harassed her after their breakup."  Gov't's Mot. at 11.

As a result of this offense conduct, as noted, defendant is charged with two serious felony offenses and two misdemeanor offenses.  Specifically, he is charged with forcibly assaulting, resisting, opposing, impeding, intimidating or interfering with any person designated in 18 U.S.C. §1114 while engaged in or on account of the performance of official duties, in violation of 18 U.S.C. § 111(a)(1), which offense carries up to 8 years imprisonment; and with committing or attempting to commit any act to obstruct, impede, or interfere with any law enforcement officer lawfully engaged in the lawful performance his official duties incident to and during the commission of a civil disorder which in any way or degree obstructs, delays, or adversely affects the performance of any federally protected function, in violation of 18 U.S.C. § 231(a)(3), which offense carries up to 5 years imprisonment.

*United States v. Mock*, 21-MJ-469

While defendant is not alleged to have engaged in prior planning for violence, *United States v. Chrestman*, Case No. 21-mj-218 (ZMF), 2021 LEXIS 36117, at *22 (D.D.C. Feb. 26, 2021), even if he may have anticipated it; carried or used a dangerous weapon during the Capitol attack, *id.*; entered the Capitol building, *id.* at *23; or coordinated with other riot participants "before, during or after the riot," *id.*, other aspects of his conduct cross the line to warrant detention. The D.C. Circuit has instructed that "those who actually assaulted police officers and broke through windows, doors, and barricades, and those who aided, conspired with, planned, or coordinated such actions, are in a different category of dangerousness than those who cheered on the violence or entered the Capitol after others cleared the way." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). This defendant falls within the "different category" of January 6 defendants identified in *Munchel* by virtue of having physically assaulted two police officers while helping the crowd gain entry to the Capitol building. By contrast, the defendants in *Munchel*, though carrying a dangerous weapon (taser) inside the Capitol, did not activate the weapon, vandalize any property or physically harm any person. *Id.*

In addition, rather than merely being one of the crowd following others, defendant "assumed . . . a *de facto* leadership role in the assault" by positioning himself at the front of the mob, aggressively taunting and assaulting police to disrupt the police defense, which allowed the mob to enter the Capitol, passing out riot shields he had stolen from law enforcement, all of which conduct "encourage[d] other rioters' misconduct." *Chrestman*, 2021 U.S. Dist. LEXIS 361117 at *23. Defendant's "confront[ation with] . . . law enforcement," *id.* at *24, including his "attempt[s] to injure" two officers, whom defendant in quick succession shoved to the ground and/or kicked, *id.* at *23, demonstrates defendant's willingness to engage in aggressive and violent conduct towards police officers in order to pursue his own political views, which views

seem to persist. This conduct, along with his attempts to pressure a witness not to reveal evidence against him from FBI investigators, weighs in favor of pretrial detention.

**(2) The Weight of the Evidence Against the Person:**

The weight of the evidence against the defendant strongly favors detention. The government has over a dozen photos, video clip screenshots and two videoclips showing defendant engaged in the offense conduct underlying the charges against him, including his two assaults on two different USCP officers and taking an aggressive role at the front of the crowd of rioters standing off against the police. SOF at 2–7, 10–11; Gov't's Ex. A, BWC Footage from MPD Officer C.W. ("C.W. BWC Footage"); Gov't's Ex. E, BWC Footage from MPD Officer H.F. ("H.F. BWC Footage"). Included in the evidence are two clear photos of defendant, mid-shove, pushing down two different USCP officers and disrupting the police line's ability to ward off the angry crowd, SOF at 2, 5, and clear video footage of defendant stealing police shields left on the ground where officers had been assaulted and handing them back to the mob for their use against police officers, *id.* at 6; H.F. BWC Footage. Moreover, the government's proffer provides multiple witness statements recalling defendant bragging about "beating up officers" once defendant was home in Minnesota, Gov't's Mot. at 15, in addition to records of defendant's own statements about "fight[ing] back," Compl. at 9.

**(3) The History and Characteristics of the Person:**

The history and characteristics of the defendant also weigh in favor of detention. On the one hand, defendant has close ties to Minnesota, where he has lived for the past 21 years. Def.'s Opp'n at 2. He currently lives in his own home and does not own any firearms. *Id.* His mother expresses her strong support, describing defendant as "hardworking" and "always ensur[ing] to meet his children's needs." D. Minn. Pretrial Services Report ("PSR") (Sealed) at 2, ECF No.

12-2. Defendant was additionally employed by a landscaping company from 2009 to 2021, at which point defendant lost his job "due to the anticipated negative publicity related to the investigation and filing of the pending charges," *id.* at 3.

On the other hand, defendant's criminal history and recent conduct raise serious red flags of concern. He has a past conviction for second-degree assault with a dangerous weapon that, although eleven years old, involved extremely troubling conduct. That conviction stemmed from an incident in which defendant accosted three teenagers, whom defendant suspected of setting a portable toilet on fire, and pointed a gun at the children's heads. Gov't's Mot. at 11. When a woman bystander tried to intervene, defendant pushed her and called her a "f****** b****," *id.*, and then later told his wife to lie to the police, instructing "if the cops come, I was here all night," PSR at 5. Then, when police arrived at the scene, defendant refused to follow police directions to surrender and come out of his home, prompting the local police department to call a SWAT team to apprehend defendant. *Id.* Moreover, despite the restrictions imposed upon defendant during pretrial release for his second-degree assault charge, defendant was subsequently arrested two different times for disorderly conduct. *Id.* Defendant was ultimately sentenced to 365 days in jail, 36 months custody stayed seven years and seven years' probation, which probationary term expired in January 2018. To his credit, defendant had no violations during supervision nor has had any arrests or convictions since then, until now.

Standing alone, defendant's single, eleven-year-old conviction would not be either dispositive nor even weigh heavily in favor of pretrial detention. Yet, the similarities between defendant's violent and aggressive conduct underlying his prior assault conviction and defendant's recent threatening conduct towards his ex-girlfriend in service of concealing evidence against him, and particularly the menacing nature of defendant "show[ing] up

unannounced" to his ex-girlfriend's house and harassing her, raises serious question whether defendant can be safely released under any conditions without risking danger to prospective witnesses.

Taken together, even in light of defendant's mitigating history and characteristics, the considerations relevant to this factor favor pretrial detention.

### (4) The Nature and Seriousness of the Danger to Any Person or the Community that Would be Posed by the Person's Release:

The nature and seriousness of the danger to the community posed by the defendant's release also weigh in favor of detention. Defendant was part of the mob attack on the Capitol in which many people, including police officers, were injured—some fatally—and Congress's constitutional task of counting electoral college votes was disrupted and delayed. Defendant's 2011 charge and the circumstances surrounding that incident, his willingness to attack two different police officers with his bare hands, his brazen lack of remorse for his actions and his disturbing attempts to intimidate his ex-girlfriend into concealing evidence of his conduct, taken together, amplify concern that defendant risks obstruction and that no condition or conditions will assure the safety of the community and potential witnesses, if he were to be released.

Defendant, acknowledging that "[w]hatever potential persuasiveness the government's failure to seek detention in another case carries in the abstract, every such decision by the government is dependent on the specific facts and circumstances of each case," Def.'s Suppl. Mem. Opp'n Gov't's Mot. Emergency Stay and for Review of Release Order ("Def.'s Suppl.") at 1, ECF No. 15 (quoting *Munchel*, 991 F.3d at 1284), points to a number of comparator cases to consider "in weighing the government's proffer of dangerousness," *id*. at 2. As the government points out, however, defendant does "not identif[y] a single case of a released Capitol riot defendant that involved the same trifecta of facts that establish his dangerousness," namely, "[1]

a violent criminal history, [2] violent conduct at the Capitol, and [3] threats to a witness afterward." Gov't's Resp. to Def.'s Suppl. Mem. ("Gov't's Suppl.") at 3, ECF No. 16. Indeed, Capitol defendants that share these traits have been detained pretrial and had their detentions affirmed by the D.C. Circuit. *See, e.g.*, Order of Detention Pending Trial at 6–7, *United States v. Worrell*, Case No. 21-cr-292-RCL, ECF No. 13 (ordering pretrial detention of Worrell, who allegedly discharged pepper spray gel toward law enforcement, had prior criminal history involving impersonation of law enforcement officer, and, after arrest, made threatening comments regarding witnesses), *aff'd*, *United States v. Worrell*, No. 21-3020, 2021 U.S. App. LEXIS 13493 (D.C. Cir. May 5, 2021) (per curiam); Order of Detention Pending Trial at 6–7, *United States v. Sibick*, Case No. 21-cr-291-ABJ, ECF No. 12 (detaining Sibick, whose criminal history includes a 2015 misdemeanor conviction for failing to respond to a police command, which originally included a dismissed charge for carrying a concealed firearm, and a 2010 arrest for second degree aggravated harassment, based on January 6 alleged conduct of assaulting an officer, stealing the officer's badge and radio, and then burying incriminatory evidence in his backyard and lying to law enforcement about his involvement in the Capitol assault), *aff'd*, *United States v. Sibick*, No. 21-3015, 2021 U.S. App. LEXIS 15341 at (D.C. Cir. May 21, 2021) (per curiam). Moreover, defendants who also engaged in egregious conduct involving the use or discharge of a dangerous weapon on January 6 that posed a threat of harm to others, have similarly been detained, even absent evidence of actual harm to another person, post-January 6 obstructive conduct or a violent criminal history. *See, e.g.*, Order of Detention Pending Trial at 4–5, *United States v. Quaglin*, Case No. 21-mj-355-ZMF, ECF No. 14 (detaining Quaglin for shoving police officers to the ground, shooting MK-9 OC spray "directly into the face of an

*United States v. Mock*, 21-MJ-469

officer who was not wearing a mask," and later boasting of his conduct), *aff'd*, *United States v. Quaglin*, No. 21-3028, 2021 U.S. App. LEXIS 18965 (D.C. Cir. Jun. 24, 2021) (per curiam).

The sixteen cases defendant raises as comparators where the government did not seek detention, thirteen of which were submitted in a spreadsheet format, are each distinguishable from the government's proffer in the instant case in multiple respects. For example, in one cited comparator case, the defendant was released pre-indictment when only charged with misdemeanor offenses, whereas here defendant is charged with both serious felony offenses and misdemeanors. *See* Criminal Compl. at 1, *United States v. Council*, Case No. 21-cr-207-TNM (D.D.C. Jan. 7, 2021), ECF No. 1. In another case defendant cites as a comparator, *United States v. Schaffer*, *see* Def.'s Suppl. at 9–11, Schaffer, who is a member of the Oath Keepers and unholstered bear spray he carried into the Capitol building during the Capitol attack, was initially detained on the government's motion and only released upon entering a guilty plea pursuant to a cooperation agreement with the government—indicating a level of remorse, accountability and acceptance of responsibility for the Capitol attack that significantly reduces risks of dangerousness. *See* Order of Detention Pending Trial at 3, *United States v. Schaffer*, Case No. 21-cr-306-APM (D.D.C. Mar. 24, 2021), ECF No. 12; Plea Agreement at 5–6, *United States v. Schaeffer*, Case No. 21-cr-306-APM (D.D.C. Apr. 16, 2021), ECF No. 29; Min. Entry, *United States v. Schaeffer*, Case No. 21-cr-306-APM (D.D.C. Apr. 16, 2021) (releasing Schaffer on personal recognizance after guilty plea).

In a number of cited comparator cases, where defendants attempted or engaged in some form of physical assault on police officers but where the government nonetheless did not seek pretrial detention, the defendants lacked "any discernible criminal or violent history," making the threat of dangerousness they might have posed "limited to their conduct on January 6." *United*

States v. Owens, Case No. 21-cr-286 (BAH), 2021 U.S. Dist. LEXIS 101157 at *37 (D.D.C. May 28, 2021) (noting that defendants in *United States v. Gossjankowski*, *United States v. Blair* and *United States v. Leffingwell*, for whom government did not seek pretrial detention, *inter alia*, had no "discernible criminal or violent history"); *see* Pretrial Services Report ("PSR") at 1, *United States v. Leffingwell*, Case No. 21-cr-5-ABJ (D.D.C. Jan. 8, 2021), ECF No. 4; PSR at 1, *United States v. Blair*, Case No. 21-cr-186-CRC (D.D.C. Feb. 17, 2021), ECF No. 5; PSR, *United States v. Sandoval*, Case No. 21-cr-195-TFH-1 (D.D.C. Feb. 25, 2021), ECF No. 7; PSR at 1, *United States v. Jason Douglas Owens*, Case No. 21-mj-376-RMM (D.D.C. Apr. 21, 2021), ECF No. 6; Criminal Compl., SOF at 10–11, *United States v. Jason Douglas Owens*, Case No. 21-mj-376-RMM (D.D.C. Apr. 15, 2021), ECF No. 1-1 (defendant with no criminal history and chronic medical condition released after shoving police officer in midst of crowd of rioters); PSR at 5–9, *United States v. Palmer*, Case No. 21-cr-328-TSC (D.D.C. Mar. 23, 2021), ECF No. 7 (reporting five convictions for non-violent misdemeanor offenses, a 1989 felony conviction for organized fraud and a single 1992 misdemeanor battery conviction); Gov't's Suppl. at 1–2 (noting that Palmer "surrendered voluntarily to authorities"); Criminal Compl., SOF at 5–6, *United States v. Mackrell*, Case No. 21-cr-276-CKK (D.D.C. Mar. 16, 2021), ECF No. 1-1 (defendant without any criminal history released after striking an officer's helmet twice and trying to grab the officer's face mask); Criminal Compl., SOF at 3–5, *United States v. Wilson*, Case No. 21-cr-345-RCL, ECF No. 1-1 (defendant without any violent criminal history released after having "picked up a several foot long white cylindrical object, believed to be a thin polyvinyl chloride (PVC) pipe" and "jabbed" officers with it before "toss[ing] it at the officers"); Criminal Compl., SOF at 8, *United States v. Stecher*, Case No. 21-mj-276-RMM, ECF No. 1-1 (defendant with no criminal

*United States v. Mock*, 21-MJ-469

history released after "push[ing] against and assault[ing] officers while attempting to gain further entry into the U.S. Capitol building.").[2]

Finally, in the remaining comparator cases, where the defendant is alleged to have assaulted officers in a wholly intentional manner, as here, and also has unknown criminal history or a significant criminal history, including for violent crimes, but was nonetheless released pretrial without government objection, the defendant was not also under investigation for obstruction. Criminal Compl., SOF at 4–5, 7–8, *United States v. Thomas*, Case No. 21-mj-448-ZMF (D.D.C. May 25, 2021), ECF No. 1-1 (Thomas allegedly "pushed against [officers'] shields with his forearm," returned "at least twice to punch or strike the officers with his fist and forearm" and later "hit . . . officers with his forearm and elbow," and "tried to kick [officers'] shield[s]," but was released); PSR at 1, 3, *United States v. Thomas*, Case No. 21-mj-448-ZMF (D.D.C. Jun. 3, 2021), ECF No. 10 (noting Thomas has significant, chronic physical health conditions); Criminal Compl., SOF at 9, *United States v. Connell*, Case No. 21-cr-84-PLF (D.D.C. Jan. 15, 2021), ECF No. 1-1 (defendant with 2016 conviction for misdemeanor battery who claimed to have "pushed the cops against the wall," causing them to "drop[] all their gear and l[eave]"); Criminal Compl., SOF at 3–8, *United States v. Capsel*, Case No. 21-mj-122-RMM (D.D.C. Jan. 19, 2021), ECF No. 1-1 (defendant who had no history of convictions for violent conduct, although he had a pending charge for domestic battery and violating an order of protection, released after engaging in physical altercation with National Guardsman a fair distance from the Capitol building, after 6 PM, on January 6, when the Capitol attack had been quelled); Criminal Compl., SOF at 8–9, *United States v. Southard-Rumsey*, Case No. 21-cr-387-

---

[2] Defendant also cites *United States v. Stevens,* where the government *did* move for detention before a Florida magistrate judge, but simply did not appeal the magistrate judge's release determination. *See* Gov't's Suppl. at 3; *see also* Rule 5(c)(3) Documents at 4, *United States v. Stevens*, 21-cr-40-TNM (D.D.C. Feb. 12, 2021), ECF No. 5 (recording government's motion for detention).

APM (D.D.C. Jun. 1, 2021), ECF No. 1-1 (defendant, whose criminal history is unknown, released after obtaining "a flagpole which she . . . pressed against [an officer's] chest" causing the officer to fall backwards through a "set of doors leading onto the House floor" and "into the Lafayette marble statute[,] striking the back of the left side of his head on the base of the statue").

Consideration of the foregoing comparator cases demonstrates that pretrial detention here fully accords with determinations of dangerousness in other cases arising from the January 6 Capitol attack, and the Court is persuaded by the government's proffer of clear and convincing evidence that detention is appropriate in light of the particular facts and circumstances bearing on defendant's case.