## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **Criminal Action No. 21-444 (JEB)** |
| **BRIAN CHRISTOPHER MOCK,** | |
| **Defendant.** | |

### MEMORANDUM OPINION AND ORDER

Defendant Brian Christopher Mock has been indicted on multiple charges arising from his participation in the January 6, 2021, riot at the U.S. Capitol.  See ECF No. 36 (Superseding Indictment).  Chief Judge Beryl Howell ordered him detained on June 29, 2021, see ECF No. 20 (Detention Order), and he has been held since.  Now proceeding *pro se*, Mock orally asked the Court to review that detention, and it thus held a hearing on January 14 and 20, 2022.  See Minute Entries.  It now denies that Motion.  He has also filed a Motion to Dismiss the Indictment, see ECF No. 35 (MTD), which meets the same fate.

The current Superseding Indictment charges Mock with nine counts: Civil Disorder (I), Assaulting, Resisting, or Impeding Certain Officers (II, III), Theft of Government Property (IV), Entering and Remaining in a Restricted Building or Grounds (V), Disorderly and Disruptive Conduct in a Restricted Building or Grounds (VI), Engaging in Physical Violence in a Restricted Building or Grounds (VII), Disorderly Conduct in a Capitol Building (VIII), and Act of Physical Violence in the Capitol Grounds or Buildings (IX).  See Sup. Ind. at 1–5.  The counts largely stem from Mock's physical altercations with police officers on the grounds of the Capitol.

I.     **Motion to Dismiss**

Defendant has filed a handwritten 43-page Motion that "seek[s] dismissal of all counts of Indictment based on dereliction of duty, insubordination and excessive use of force by the United States Capitol Police and other law enforcement agencies at and around the Capitol building and grounds during the events of 1/6/21." MTD at 1.  The lion's share of the Motion is devoted to allegations about police misconduct and a defense of Mock and his fellow rioters as peaceful protesters who were acting in self-defense against an overly aggressive police force.

Prior to trial, a defendant may move to dismiss an indictment (or specific counts) on the ground that there is a "defect in the indictment or information," including a "failure to state an offense." Fed. R. Crim P. 12(b)(3)(B)(v).  "The operative question is whether the allegations, if proven, would be sufficient to permit a jury to" conclude that the defendant committed the criminal offense as charged.  United States v. Sanford, Ltd., 859 F. Supp. 2d 102, 107 (D.D.C. 2012); United States v. Bowdoin, 770 F. Supp. 2d 142, 146 (D.D.C. 2011).  "[A]n indictment is sufficient if it, first, contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend, and, second, enables him to plead an acquittal or conviction in bar of future prosecutions for the same offense." Hamling v. United States, 418 U.S. 87, 117 (1974) (citations omitted).

Even construed liberally, the difficulty with Mock's Motion is that it contests facts.  In other words, he believes that the facts that would come out at trial would show that he is innocent of the charges he faces.  While that may ultimately occur, it is no basis for the Court to dismiss an indictment that has been validly returned.  See, e.g., United States v. Ring, 628 F. Supp. 2d 195, 204 (D.D.C. 2009) ("In considering a motion to dismiss under Rule 12, the Court is bound to accept the facts stated in the indictment as true.") (citations and internal quotation

marks omitted); United States v. Safavian, 429 F. Supp. 2d 156, 158–59 (D.D.C. 2006) (pretrial motion to dismiss arguing insufficiency of evidence improper where no stipulated record and no full proffer of evidence by Government; "At this stage of the proceedings, the Court is not concerned with the sufficiency of the evidence, but only with the sufficiency of the indictment."). This is particularly true where the Government's portrait of events, supported by extensive video evidence, depicts a radically different set of facts from Defendant's. See United States v. Nitschke, 843 F. Supp. 2d 4, 8 (D.D.C. 2011) (noting Circuit approval of "pretrial dismissal of indictment on sufficiency-of-the-evidence grounds where the government failed to object and there were no material facts in dispute"). The Motion will thus be denied.

## II.    Bond Review

Next up is Defendant's request that he be released pending trial. In finding that no conditions would reasonably ensure the safety of the community under 18 U.S.C. § 3142(f), Judge Howell considered the factors set forth in § 3142(g), which include the "nature and circumstances of the offense charged," "the weight of the evidence against the person," his "history and characteristics," and "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." Id. § 3142(g)(1)–(4).

The Government understandably argues that there is nothing new for this Court to examine in reviewing Judge Howell's determination because Mock has not offered any evidence previously unavailable. Instead, he essentially maintains that Judge Howell misinterpreted certain evidence or took unwarranted inferences from other information. To treat Defendant's request liberally, the Court will thus review the aforementioned factors in light of his current contentions.

In considering the first, Judge Howell described Mock's two assaults on police officers and the appropriation of at least one riot shield, which he passed back to the crowd. See Det. Order at 2–3. In his current Motion, Mock contested that account and argued that he was trying to help an officer up, not push him down. The photos and videos submitted for the hearing, while not pellucid, provide images contrary to his position. Judge Howell also cited Defendant's statements before and after the incidents, glorifying violence and expressing no remorse, as well as a potentially obstructive act in warning his ex-girlfriend about speaking to the FBI. Id. at 3. Although Mock disputes that he ever threatened her and also alleges some facts about her mental health, the Court has no reason to disbelieve her account.

In terms of the weight of the evidence, the Government has proffered video and still-photo images. As mentioned above, Mock urges a different interpretation from what Judge Howell concluded, but this Court does not disagree with her.

On his criminal history, Defendant complains that Judge Howell unduly emphasized his prior conviction for assault with a deadly weapon, where he allegedly "accosted three teenagers, whom defendant suspected of setting a portable toilet on fire, and pointed a gun at the children's heads." Id. at 7 (citation omitted). He also allegedly pushed away a bystander, refused to follow police directions to surrender, and told his wife to lie to the police. Id. Mock contends, conversely, that while he may have threatened the perpetrators, he kept his gun in his pocket. As Judge Howell pointed out, although the conviction is eleven years old, "the similarities between defendant's violent and aggressive conduct underlying his prior assault conviction and [his] recent threatening conduct towards his ex-girlfriend in service of concealing evidence against him, . . . raise[] serious questions [about] whether defendant can be safely released under any conditions without risking danger to prospective witnesses." Id. at 7–8. This Court concurs.

4

Last, Judge Howell concluded on the fourth factor:

> The nature and seriousness of the danger to the community posed by the defendant's release also weigh in favor of detention. Defendant was part of the mob attack on the Capitol in which many people, including police officers, were injured — some fatally — and Congress's constitutional task of counting electoral college votes was disrupted and delayed. Defendant's 2011 charge and the circumstances surrounding that incident, his willingness to attack two different police officers with his bare hands, his brazen lack of remorse for his actions and his disturbing attempts to intimidate his ex-girlfriend into concealing evidence of his conduct, taken together, amplify concern that defendant risks obstruction and that no condition or conditions will assure the safety of the community and potential witnesses, if he were to be released.

Id. at 8.  She then spent a fair bit of time looking at comparators and explaining why detention was justified here.  Id. at 8–13.  Mock contends that his conduct was less egregious than that of the defendant in United States v. Worrell, No. 21-292, who was released last November after approximately eight months in custody.  Yet, as the Government pointed out at the hearing, Worrell was released almost exclusively because of health issues.  Not only does he have cancer, but he also was not getting treatment at the D.C. Jail for a broken finger, leading Judge Royce Lamberth to lift his detention in connection with finding the Jail in contempt.  Id., ECF No. 112 (exhibits including medical records).  Mock presents no such similar concerns.

Although the Court is sympathetic that Mock has had a difficult time viewing evidence and accessing the law library — particularly while functioning as his own lawyer — it does not see a sufficient basis to overturn Judge Howell's Detention Order.

5

**III.    Conclusion**

The Court, accordingly, ORDERS that:

1.   Defendant's Motion to Dismiss the Indictment is DENIED; and

2.   Defendant's Motion for Bond Review is DENIED.




                                        /s/ James E. Boasberg
                                        JAMES E. BOASBERG
                                        United States District Judge

Date:  January 26, 2022