**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **No. 1:21-cr-444-JEB** |
| **BRIAN CHRISTOPHER MOCK,** | |
| **Defendant.** | |

**RESPONSE TO DEFENDANT'S MOTION**
**TO DISMISS THE INDICTMENT**

For the third time, the defendant—now convicted after trial—has moved to dismiss the indictment, this time *pro se* and based on claims that the government violated his due process rights. ECF No. 92. The defendant's latest attempt to escape justice should meet the same fate as his last two. *See* ECF Nos. 35, 40, 75-79, 83. The Court should deny his motion in its entirety.

Reading it in the most generous light possible, as is appropriate for a defendant proceeding *pro se*, the defendant's motion raises four claims: (1) the indictment is insufficient because it fails to name victims or corroborating witnesses for each assault; (2) the trial testimonies of U.S. Capitol Police Officers Jonathan Collins and Stevin Karlsen were inconsistent with their prior statements and the defendant's view of the evidence; (3) the government violated the defendant's due process rights by failing to warn him during plea negotiations that it could supersede and charge him with additional crimes; and (4) the government has engaged in a vindictive prosecution.[1] The government will address each of these assertions in turn.

---

[1] Many of the defendant's complaints appear to center not on trial but on the evidence presented and statements made at the detention hearing held at the outset of the case, *see* Minute Entry for June 22, 2021, as well as then-Chief Judge Howell's resulting order that he be detained pending trial, ECF No. 20. While these things may continue to rankle the defendant, they are legally irrelevant at this point.

### A. The Defendant's Rule 29 Arguments Are Moot.

In denying the defendant's Rule 29 motion at the close of the government's case-in-chief at trial, the Court already ruled on many of the arguments raised by the defendant in his latest motion to dismiss. First, contrary to the defendant's misguided belief,[2] an indictment charging violations of 18 U.S.C. §§ 111(a)(1) and (b) and 1752(a)(4), and 40 U.S.C. § 5104(e)(2)(F) need not "name the alleged victim to the alleged assaults or a single witness to corroborate its allegation," ECF No. 92 at 3, nor must Count Five have explicitly "state[d] if the piece of the plastic flagpole actually hit anyone," *id.* at 4. In fact, an indictment is sufficient under the Constitution and Rule 7 of the Federal Rules of Criminal Procedure if it "contains the elements of the offense charged and fairly informs a defendant of the charge against which he must defend," *Hamling v. United States*, 418 U.S. 87, 117 (1974), which may be accomplished, as it is here, by "echo[ing] the operative statutory text while also specifying the time and place of the offense." *United States v. Williamson*, 903 F.3d 124, 130 (D.C. Cir. 2018). "[T]he validity of an indictment 'is not a question of whether it could have been more definite and certain.'" *United States v. Verrusio*, 762 F.3d 1, 13 (D.C. Cir. 2014) (quoting *United States v. Debrow*, 346 U.S. 374, 378 (1953)). And an indictment need not inform a defendant "as to every means by which the prosecution hopes to prove that the crime was committed." *United States v. Haldeman*, 559 F.2d 31, 124 (D.C. Cir. 1976). The original indictment, ECF No. 22, superseding indictment, ECF No. 36, and second superseding indictment, ECF No. 64, all meet this low bar.

The defendant's second Rule 29-related complaint is his contention that Officers Collins and Karlsen were not credible trial witnesses, that their testimonies were inconsistent with their

---

[2] The defendant, who filed the instant motion *pro se* and appears to have no legal education or training, relies on a D.C. Superior Court case, *Joseph v. United States*, 597 A.2d 14 (D.C. 1991), that has no precedential value, given that it is interpreting D.C. law, not federal law.

prior statements and the evidence, and that their testimonies failed to establish the assault counts related to them (Counts Three and Four, respectively). *See* ECF No. 92 at 5-8. The defendant was free to cross-examine Officers Collins and Karlsen, did so, and argued to the Court in closing that their testimonies were not credible, consistent, or sufficient. The Court—in announcing its Rule 29 ruling and its verdict—disagreed. Moreover, the testimonies of Officers Collins and Karlsen were not essential to the government's proof. As the Court highlighted in both its Rule 29 ruling and verdict, video footage captured the defendant's crimes. His contention that the case should be dismissed because he disagrees with the government and the Court's view of the evidence is thus both moot and meritless.

### B.       The Confrontation Clause Does Not Require a Victim to Testify

Again betraying his lack of legal education or training, the defendant contends—without citation to any authority—that Count Three should be dismissed because the indictment "had no alleged victim in violation of the Confrontation Clause of Amendment Six to the Constitution of the United States of America." ECF No. 92 at 1. This argument is meritless. As the Court is well aware, the Confrontation Clause requires no such thing. "It is a procedural rather than a substantive guarantee" that ensures a defendant is able to test the reliability of witnesses and testimonial evidence against him "in the crucible of cross-examination," but it does not require the government to call any particular person as a witness. *See Melendez Diaz v. Massachusetts*, 557 U.S. 305, 317 (2009) (citing *Crawford v. Washington*, 54 U.S. 36, 51 (2004)).

### C.       The Government Has No Duty to Warn the Defendant that He Could Be Charged with Additional Crimes.

The defendant asserts that the government sought the second superseding indictment, ECF No. 64, as "retaliation" against the defendant for "declining its plea offer," in violation of "the Fifth Amendment's Due Process protection and the Notice requirement" of the Sixth Amendment

"in that the government made no mention prior to plea negotiations that defendant's failure to accept its offer could or would result in additional charges," ECF No. 92 at 2-3. Again, the defendant relies on a D.C. Superior Court case for support. *Id.* at 3 (citing *Washington v. United States*, 434 A.2d 394 (D.C. 1980)). Besides being factually false—as discussed further below, the government conducted a further, more granular investigation of the defendant's conduct on January 6, 2021 in preparation for trial and discovered additional criminal acts—the defendant's contention is legally wrong as well. The government has no duty to warn the defendant that additional charges could be brought against him.

> ### D. The Defendant Has Failed to Make the Required Showing to Support His Vindictive Prosecution Claim.

The defendant further asserts that the government has engaged in a vindictive prosecution of him. *See* ECF No. 92 at 5-9. In support, he claims that the government knew about inconsistencies in Officer Karlsen's statements and ignored them, repeatedly "changed its version of events," "attempted to conceal the truth," misled the Court, and then superseded to add charges when the defendant rejected the plea offer. *Id.* In addition to being "science fiction," as the Court termed some of the trial testimony offered by a defense witness, the defendant's assertions fail to meet the high standard for establishing vindictive prosecution.

> ### 1. The Standard for Vindictive Prosecution

Federal courts have long recognized that enforcement of the nation's criminal laws is "a 'special province' of the Executive." *United States v. Armstrong*, 517 U.S. 456, 464 (1996). Prosecutors have "broad discretion to enforce the law, and their decisions are presumed to be proper absent clear evidence to the contrary." *United States v. Slatten*, 865 F.3d 767, 799 (D.C. Cir. 2017) (*citing Armstrong*, 517 U.S. at 464).

"'Prosecutorial vindictiveness' is a term of art with a precise and limited meaning." *United States v. Meyer*, 810 F.2d 1242, 1245 (D.C. Cir. 1987) (citing *United States v. Goodwin*, 457 U.S. 368, 372 (1982)). The doctrine "precludes action by a prosecutor that is designed to penalize a defendant for invoking any legally protected right available to a defendant during a criminal prosecution . . . ." *United States v. Safavian*, 649 F.3d 688, 692 (D.C. Cir. 2011). Thus, it is traditionally seen in cases in which the prosecution adds additional charges after the defendant successfully appeals. *Id.*

"[T]o succeed on a claim of vindictive prosecution, a defendant must establish that the increased charge was 'brought *solely* to "penalize" [him] and could not be justified as a proper exercise of prosecutorial discretion.'" *Slatten*, 865 F.3d at 799 (quoting *Goodwin*, 457 U.S. at 380 n.12). There are two ways a defendant may make this showing: "through objective evidence showing actual vindictiveness, or through evidence 'indicat[ing] a "realistic likelihood of vindictiveness,"' which gives rise to a presumption that the government must then attempt to rebut." *Id.* (quoting *Meyer*, 810 F.2d at 1245).

"'To prove actual vindictiveness requires objective evidence that the prosecutor's actions were designed to punish a defendant for asserting his legal rights. Such a showing is normally exceedingly difficult to make.'" *United States v. Gary*, 291 F.3d 30, 34 (D.C. Cir. 2002) (quoting *Maddox v. Elzie*, 238 F.3d 437, 446 (D.C. Cir. 2001).

*Goodwin* is instructive. 457 U.S. 368. In *Goodwin*, the defendant was charged with misdemeanors. When he requested a jury trial, the government indicted him for a felony. *Id.* at 370. The Supreme Court declined to apply a presumption of vindictiveness, explaining, "[t]here is good reason to be cautious before adopting an inflexible presumption of prosecutorial vindictiveness in a pretrial setting. In the course of preparing a case for trial, the prosecutor may uncover additional information that suggests a basis for further prosecution *or he simply may come*

*to realize that information possessed by the State has a broader significance.*" *Id.* at 381 (emphasis added). The Court found that:

> [T]he timing of the prosecutor's action in this case suggests that a presumption of vindictiveness is not warranted. A prosecutor should remain free before trial to exercise the broad discretion entrusted to him to determine the extent of the societal interest in prosecution. An initial decision should not freeze future conduct. As we made clear in *Bordenkircher* [434 U.S. 357, 364 (1978)], the initial charges filed by a prosecutor may not reflect the extent to which an individual is legitimately subject to prosecution.

*Id.* at 381-82. "[T]he mere fact that a defendant refuses to plead guilty and forces the government to prove its case is insufficient to warrant a presumption that subsequent changes in the charging decision are unjustified." *Id.* at 382-83. The Court thus declined to presume vindictiveness simply because the government brought additional/greater charges after the defendant made a pretrial demand for a jury trial. *Id.* At 384. As the *Goodwin* Court explained, "a change in the charging decision made <u>after an initial trial is completed</u> is much more likely to be improperly motivated than is a pretrial decision." 457 U.S. at 381 (emphasis added).

Notwithstanding *Goodwin*, the D.C. Circuit has found that a defendant can still attempt to establish a presumption of vindictiveness based upon the charges against him being increased pretrial. In such a scenario, the defendant "must show the prosecutor's action was 'more likely than not' attributable to vindictiveness." *Safavian*, 649 F.3d at 692 (quoting *Gary*, 291 F.3d at 34 (quoting *Alabama v. Smith*, 490 U.S. 794, 801 (1989))). This is a difficult showing to make: "In a pre-trial setting, 'the prosecutor's assessment of the proper extent of prosecution may not have crystallized,' so an increase in charges may be the result of additional information or further consideration of known information, rather than a vindictive motive." *Slatten*, 865 F.3d at 799 (quoting *Goodwin*, 457 U.S. at 381). Indeed, "[t]he routine exercise of many pre-trial rights also weakens any inference of vindictiveness, *i.e.*, that a prosecutor would retaliate simply because a defendant sought a jury trial or pleaded an affirmative defense." *Id.* "Moreover, 'so long as the

prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion.'" *United States v. Meadows*, 867 F.3d 1305, 1313 (D.C. Cir. 2017) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978)). Therefore, "in the pre-trial context, a defendant must provide additional facts sufficient to show that 'all of the circumstances, when taken together, support a realistic likelihood of vindictiveness.'" *Slatten*, 865 F.3d at 799 (quoting *Meyer*, 810 F.2d at 1245-46).

Pre-trial prosecutorial vindictiveness is rarely found, but when it occurs, it often looks like *Meyer*, not this case. 810 F.2d 1242. In *Meyer*, the Park Police arrested 200 demonstrators outside the White House. *Id.* at 1243. The demonstrators were cited and given the opportunity to pay a $50 fine or proceed to trial. *Id.* at 1243-44. Those who decided to proceed to trial were charged with an additional crime. *Id.* at 1244. The court of appeals applied a presumption of vindictiveness, emphasizing that "the most important of the circumstances peculiar to this case is the government's disparate treatment of the defendants who elected to go to trial and the defendants who elected to forego their trial rights. . . . This disparate treatment must give rise to a suspicion that the government discriminated among the defendants on the basis of their divergent decisions whether to exercise their right to trial." *Id.* at 1246. The court further found that "[t]he simplicity and clarity of both the facts and law underlying these prosecutions heightens the suspicion of prosecutorial vindictiveness." *Id.* It found that the government's motion to drop the new charge at the beginning of the hearing on prosecutorial vindictiveness evidenced "a disturbing willingness to toy with the defendants" that further supported a presumption of vindictiveness. *Id.* at 1247. Finally, the court of appeals found that this case involved "something other than routine invocations of procedural rights on the part of individual defendants." *Id.*

Even where a court finds that a defendant has met his burden of establishing a presumption of vindictiveness, the government may overcome the presumption "with 'objective information in the record justifying the increased sentence [or charges].'" *Maddox*, 238 F.3d at 446 (quoting *Goodwin*, 457 U.S. at 374). "That burden is 'admittedly minimal – any objective evidence justifying the prosecutor's actions will suffice.'" *Meadows*, 867 F.3d at 1312 (quoting *Safavian*, 649 F.3d at 694)).

2.      The Defendant Has Not Alleged a Supportable Theory of Vindictive Prosecution.

The defendant's apparent theory of vindictive prosecution rests on his unfounded claim that the government retaliated against him for rejecting the government's plea offer. He offers no objective or subjective evidence in support of this theory. And the timing of the relevant events contradicts it.

The government transmitted its plea offer to the defendant via letter, delivered over e-mail, on September 15, 2021. At the time, the defendant was represented by Assistant Federal Defender Keala Ede and the government was represented by Assistant United States Attorney ("AUSA") Amanda Jawad. The letter explicitly stated that the plea offer expired on October 15, 2021. Approximately six weeks later, on December 1, 2021, the government superseded the indictment for the first time. *See* ECF No. 36. Importantly, the superseding indictment did not add any new charges; it only removed language related to the Vice President-elect from then-Counts Five, Six, and Seven, misdemeanor violations of 18 U.S.C. § 1752(a)(1), (2), and (4), respectively. *Compare* ECF No. 22 *and* ECF No. 36. The defendant's rejection of the government's plea offer did not lead the government to add charges even though it was already returning to the grand jury, undermining his theory.

The timeline reveals what actually happened: two new prosecutors took over the case from AUSA Jawad and, in anticipation of trial, reviewed both the charging instrument and the evidence collected against the defendant with a proverbial fine-toothed comb and conducted further investigation, which yielded additional evidence and supported both new and amended charges. Indeed, at a status conference held on February 18, 2022, four months after the defendant rejected the government's plea offer, the defendant informed the Court that he wished to go to trial, at which he intended to represent himself *pro se*; the Court set April 18, 2022, as the trial date. *See* Minute Entry for Feb. 18, 2022. One week later, AUSA Michael M. Gordon joined the case for the government. *See* ECF No. 44. Approximately a month before the scheduled trial date, AUSA Jawad left government service and the defendant retained new counsel, who successfully petitioned the Court to vacate the trial date, *see* Minute Entry for March 22, 2022, which the Court eventually reset for February 14, 2023, *see* Minute Entry for July 22, 2022. On October 7, 2022, however, the defendant changed counsel. *See* Minute Entry for Oct. 7, 2022. On November 3, 2022, a few months before the new February 14, 2023 trial date, Trial Attorney Michael L. Jones joined the government's team. *See* ECF No. 57.

On January 26, 2023, the defendant and his new counsel sought a second continuance of the trial date, which the Court granted, resetting the trial for May 15, 2023. With the benefit of extra time to prepare, AUSA Gordon and Trial Attorney Jones undertook an extensive review of the case, noticed potential pitfalls in the language used for some of the charges in the superseding indictment, and discovered new evidence. Accordingly, the government sought—and the grand jury returned—a second superseding indictment, updating the charging language on some counts, adding three new felony charges, converting three of the misdemeanor charges to felonies, and dropping one misdemeanor count. *Compare* ECF No. 36 and ECF No. 64. As *Goodwin* expressly recognizes, "[i]n the course of preparing a case for trial, the prosecutor may uncover additional

information that suggests a basis for further prosecution *or he simply may come to realize that information possessed by the State has a broader significance.*" 457 U.S. at 381 (emphasis added). That is what occurred here, plain and simple.

## CONCLUSION

For the reasons stated above, the defendant's motion lacks merit and the Court should deny it in its entirety.

Dated July 18, 2023.

Respectfully submitted,

MATTHEW M. GRAVES
UNITED STATES ATTORNEY
D.C. Bar No. 481052

*/s/ Michael M. Gordon*
MICHAEL M. GORDON
Assistant United States Attorney, Detailee
Florida Bar No. 1026025
400 N. Tampa St., Suite 3200
Tampa, Florida 33602
michael.gordon3@usdoj.gov
Telephone: 813-274-6370

*/s/ Michael L. Jones*
MICHAEL L. JONES
Trial Attorney, Detailee
D.C. Bar No. 1047027
601 D St., NW
Washington, D.C. 20001
michael.jones@usdoj.gov
Telephone: 202-252-7820