UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>  v.<br><br>BRIAN MOCK,<br><br>     **Defendant.** | Case No. 1:21-cr-444 (JEB) |

**GOVERNMENT'S MEMORANDUM ON RESENTENCING**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum outlining the government's position on resentencing. For the reasons set forth herein, the government requests that this Court impose the same sentence it did before, ECF No. 116, and resentence Brian Mock to 33 months of imprisonment, two years of supervised release, $2,000 in restitution, and the mandatory $610 special assessment.[1]

While the holdings in *Fischer v. United States*, 603 U.S. 480 (2024) and *United States v. Brock*, 94 F.4th 39, 51 (D.C. Cir. 2024) alter Mock's Sentencing Guidelines calculation, the Court indicated at Mock's original sentencing hearing that it relied on the 18 U.S.C. § 3553(a) factors to fashion Mock's sentence, and none of those factors have meaningfully changed since the original sentencing. Moreover, even if the Court sympathizes with Mock's frustration over the Bureau of Prisons' ("BOP's") decision to deny his proposed halfway house placement, that is not a proper basis to reduce Mock's sentence under Section 3553(a). The Court specifically found a 33-month term of incarceration to be appropriate given the serious nature of Mock's crimes: that he expected

---

[1] Given that the Court of Appeals vacated one of Mock's felony convictions, this special assessment is $100 less than the one the Court previously imposed. *See* ECF Nos. 116, 117, 122.

violence in Washington, D.C. on January 6, 2024, traveled to D.C. anyway, assaulted four different police officers during the riot at the U.S. Capitol, and stole two police riot shields. ECF No. 117. The Court should reimpose the same sentence as before.

I.      **FACTUAL AND PROCEDURAL BACKGROUND**

After a five-day bench trial in the summer of 2023, the Court found Mock guilty of 11 counts, including one violation of 18 U.S.C. § 1512(c)(2) (obstruction of an official proceeding), one violation of 18 U.S.C. § 231(a)(3) (civil disorder), and four violations of 18 U.S.C. § 111(a)(1) (assault on a law enforcement officer). Minute Order 7/12/2023. The evidence at trial proved that in the month leading up to January 6, 2021, Mock repeatedly expressed in public Facebook posts, text messages with his best friend, and conversations with his oldest son, his beliefs that politicians had stolen the election, and a violent mass uprising was needed to keep these "tyrants" and "Socialists" from taking power. Government Trial Exhibits ("GEX") 803-806, 808, 810. Mock was well-aware that Congress planned to convene on January 6 to review and certify the Electoral College ballots. He wanted to stop it, and he was prepared to use force to do so.

On January 5, 2021, Mock traveled to Washington, D.C. from his Minnesota home along with his girlfriend and best friend. The next day, between approximately 2:29 p.m. and 2:35 p.m., as the riot at the Capitol raged, Mock helped other rioters remove police barricades at the northern end of the West Plaza, and then committed four separate assaults against police officers who were attempting to block the rioters' progression to the Capitol building and defend the West Plaza. First, Mock pushed a U.S. Capitol Police ("USCP") officer to the ground and kicked, or attempted to kick, him. Mock then threw a broken flagpole at another officer. After, Mock pushed a third officer in the back, before finally shoving a fourth officer to the ground, using both hands and all

of his body weight to do so, leaving the officer vulnerable and exposed to the mob. Mock then stole two USCP riot shields and passed them back to other rioters. Afterward, Mock bragged to his best friend that he "Got sprayed directly 3 times, took a flash bang and took down at least 6 cops" and that he "took 3 gates 2 shields and a bunch of equipment." GEX 909.

At sentencing, Probation calculated Mock's Sentencing Guidelines range as 87-108 months of imprisonment on the obstruction of an official proceeding count, PSR ¶¶ 141, 146, 60 months on the civil disorder count, *id.* ¶¶ 142, 146, and 87-96 months on the assault counts, *id.* ¶¶ 143, 147. Probation also alerted the Court that it identified three defendants sentenced in the last five fiscal years who shared the same primary guideline, offense level, and criminal history category as Mock; the average sentence for those three defendants was 78 months and the median sentence was 87 months. *See id.* ¶ 190. The government recommended a sentence of 109 months. ECF No. 113. The Court granted a downward variance/departure and sentenced him to 33 months of incarceration. ECF No. 116-117.

Mock is currently serving that sentence. He is incarcerated at FCI Sandstone, in Sandstone, Minnesota, a low security facility, and the BOP projects that he will be released on June 17, 2025. *See* "BOP Inmate Locator," *available at:* https://www.bop.gov/inmateloc/ (last accessed on December 28, 2024). Assuming good behavior, many inmates become eligible for halfway house placement approximately six months before their projected release dates.

Meanwhile, Mock appealed on multiple grounds, including contesting the validity of the of his conviction for violating 18 U.S.C. § 1512(c)(2). On June 28, 2024, the Supreme Court issued its opinion in *Fischer v. United States*, 603 U.S. 480 (2024), which narrowed the application of 18 U.S.C. § 1512(c)(2). As a result, and with government concurrence, the D.C. Circuit vacated

3

Mock's Section 1512(c)(2) conviction and remanded the case for further proceedings, ECF No. 122, and this Court set the case for resentencing.

At Mock's initial resentencing, the Court—after accounting for the impacts of *Fischer* and *Brock*, which held that the three-level Guidelines enhancement for "substantial interference with the administration of justice," U.S.S.G. § 2J1.2(b)(2), did not apply to cases like Mock's—determined that the appropriate adjusted Guidelines range was 51-63 months. Nevertheless, Mock requested that the Court vary even further downward than it had before and resentence him to time served. ECF No. 125. Mock contended that, per BOP policy, he was eligible to be moved to a halfway house or similar placement, but BOP—unfairly and unreasonably, in Mock's opinion—refused to approve the custodian he proposed in Minnesota, leaving him with the choice of either remaining incarcerated at FCI Sandstone or being transferred to Baltimore, where there was an available halfway house but where he had no ties and knew no one. So Mock suggested that the Court should instead lower his sentence to time served. Mock, however, left out the reason that BOP denied his request to be housed with his preferred custodian.

The Court then continued the resentencing hearing approximately two weeks to allow the government time to either arrange for a representative from the U.S. Probation Office ("Probation") in Minnesota and/or BOP to appear and explain their perspective on Mock's situation, or for the government to confer with Probation and/or BOP and communicate their position to the Court.

The government expects a representative from Probation to appear at the continued resentencing hearing and to explain that Probation rejected Mock's proposed custodian in Minnesota in part because this custodian traveled with Mock to Washington, D.C. on January 6,

4

2021, and is closely affiliated with multiple January 6 defendants. As such, Probation did not consider her to be a suitable substitute for a BOP-operated halfway house. The government agrees with Probation's determination that this person would not be suitable.

## II.    STATUTORY PENALTIES

Mock faces resentencing on the ten remaining counts of the Second Superseding Indictment. *See* ECF Nos. 64, 116-117. The maximum terms of incarceration for each count are detailed in the chart below.

| Count | Statute | Maximum Term of Imprisonment |
|---|---|---|
| 2 | 18 U.S.C. § 231(a)(3) | 5 years |
| 3 | 18 U.S.C. § 111(a)(1) | 8 years |
| 4 | 18 U.S.C. § 111(a)(1) | 8 years |
| 5 | 18 U.S.C. § 111(a)(1) | 8 years |
| 6 | 18 U.S.C. § 111(a)(1) | 8 years |
| 7 | 18 U.S.C. § 641 | 1 year |
| 8 | 18 U.S.C. § 1752(a)(1) | 1 year |
| 9 | 18 U.S.C. § 1752(a)(2) | 1 year |
| 10 | 18 U.S.C. § 1752(a)(4) | 1 year |
| 11 | 40 U.S.C. § 5104(e)(2)(F) | 6 months |

For each of the five remaining felony counts, Counts 2-6, the Court may also impose a term of supervised release of not more than three years and a fine of up to $250,000, along with the mandatory special assessment of $100 per count. For each of the four Class A misdemeanor counts, Counts 7-10, Mock also faces a maximum of one year of supervised release, a fine of up to $100,000, and the mandatory special assessment of $25 per count. And on the sole Class B misdemeanor count, Count 11, Mock also faces a fine of up to $5,000, and the mandatory special assessment of $10.

### III.     THE UPDATED SENTENCING GUIDELINES AND GUIDELINES ANALYSIS

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). As noted, at the last resentencing hearing, the Court appropriately calculated the adjusted applicable Guidelines range as is 51-63 months for Counts 3 through 6, and the government concurs with the Court's calculation. Minute Entry 12/19/2024.

After determining the defendant's Guidelines range, a court then considers any departures or variances. U.S.S.G. § 1B1.1(a)-(c). Although the government understands that the Court does not intend to impose a higher sentence than it did originally, it would not be unreasonable for the government to request an upward departure here since the defendant's Guidelines range does not capture the unprecedented and uniquely harmful nature of his crimes, which struck at the heart of our democracy and the rule of law.

Mock was an avid and willing participant in an unprecedented crime. He joined a mob that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, injured more than one hundred police officers and resulted in more than 2.9 million dollars in losses. His offense targeted the peaceful transfer of power, an essential government function, and one of the fundamental and foundational principles of our democracy. Like every member of the mob, Mock "endanger[ed] our democratic processes and temporarily derail[ed] Congress's constitutional work." *United States v. Brock*, 94 F.4th 39, 59 (D.C. Cir. 2024). As Judge McFadden put it to another rioter, "[Y]ou and your fellow rioters were responsible for substantially interfering with the certification, causing a multiple-hour delay, numerous law

enforcement injuries and the expenditure of extensive resources." *United States v. Hale-Cusanelli*, 21-cr-37 (TNM), Sent'g Tr. 9/22/22 at 86-87.

But nothing in Mock's Guidelines calculation reflects these facts. He would face the same offense level if his crimes had not endangered the democratic process or interfered with the peaceful transfer of power.[2] There is no specific offense characteristic in the Guidelines for attacking democracy or abandoning the rule of law. "And simply saying, yeah, I know I trespassed, I trespassed, that's not really capturing the impact of what that day meant when all of those members of Congress met there to fulfill their constitutional duty." *United States v. Calhoun*, 21-CR-116-DLF, Sent. Tr. at 85.

Indeed, even before *Fischer*, judges of this Court gave significant upward departures and/or variances in January 6 cases when they found the advisory guideline range inadequate. *See, e.g.*, *United States v. Hale-Cusanelli*, 21-CR-37-TNM, 9/22/22 Sent. Tr.; *United States v. Christian Secor*, 21-CR-157-TNM, 10/19/22 Sent. Tr.; *United States v. Hunter and Kevin Seefried*, 21-CR-287-TNM. 10/24/22 Sent. Tr.; *United States v. William Watson*, 21-CR-513-RBW, 3/9/23 Sent. Tr.; *United States v. Riley Williams*, 21-CR-618-ABJ, 3/23/23 Sent. Tr.; *United States v. Hatchet Speed*, 22-CR-244-TNM, 5/8/23 Sent. Tr.

After *Fischer*, courts have done the same. For example, in *United States v. Sparks*, 21-CR-

---

[2] The D.C. Circuit's holding in *United States v. Brock*, 94 F.4th 39 (D.C. Cir. 2024), finding that certain sentencing enhancements did not apply to the Congress's counting and certification of the electoral college votes, despite acknowledging that interference with this process "no doubt endanger[ed] our democratic process and temporarily derail[ed] Congress's constitutional work" demonstrates that the Sentencing Commission failed to anticipate anything like the January 6 riot when drafting the Guidelines. And the Supreme Court's recent decision in *Fischer v. United States*, 603 U.S. 480 (2024) demonstrates that even the criminal code lacks the appropriate tools to fully address the crimes of January 6. *See Fischer*, 603 U.S. at 506 (Barrett, J., dissenting) ("Who could blame Congress for [its] failure of imagination?").

7

87-TJK, Judge Kelly sentenced a defendant convicted of violating both 18 U.S.C. § 1512(c)(2) and 18 U.S.C. § 231. Prior to sentencing, in light of the Supreme Court's *Fischer* decision, the government moved to dismiss the § 1512(c)(2) count, and at sentencing, Sparks faced an advisory Guidelines range of 15–21 months. Judge Kelly found it important that despite the dismissal of the § 1512(c)(2) count, the defendant's conduct still included "an intent to obstruct or interfere with that proceeding, that important constitutional proceeding" which the court found to be "pretty dark behavior" which "posed a threat to whether our constitutional process will proceed or whether a mob would interfere with that process." *Sparks* Sentencing Tr., at 87–88. The court found that the "typical person convicted of [18 U.S.C. § 231] engaged in nothing at all like the attack on the Capitol and the certification." *Id*. at 94–95. Accordingly, the court found a significant upward departure was warranted under both U.S.S.G. §§ 5K2.7 and § 5K2.21, and in the alternative a variance of equal amount was warranted under the § 3553(a) factors, and sentenced Sparks to 53 months of imprisonment. Similarly, in *United States v. Robertson*, 21-CR-34-CRC, Judge Cooper resentenced a defendant after dismissal of a § 1512(c)(2) conviction post-*Fischer*. Without that conviction, the court determined that a new advisory Guidelines range of 37 to 46 months applied. *See Robertson* Sent. Tr., at 59. But the court also found that an upward departure was appropriate pursuant to U.S.S.G. § 5K2.7, because Robertson's conduct "resulted in a significant disruption of a governmental function, namely halting of the certification . . . and that is so regardless of whether Section 1512(c) applies." *Id*. at 61 (also finding application of §5K2.0). After considering the § 3553(a) factors, Judge Cooper sentenced Robertson to 72 months of imprisonment. Judges Walton and Howell took similar positions in *United States v. Dunfee*, 23-CR-36-RBW and *United States v. Oliveras*, 21-CR-738-BAH, respectively.

8

To be clear, the fact that the government is not seeking a variance or departure and is instead urging the Court to maintain its original sentence, does not diminish the need to appropriately account for Mock's conduct and his crimes. But given all of the above-described support for an upward departure to reflect the seriousness of Mock's crimes, the government's recommendation that the Court merely keep his sentence intact is not only reasonable, but it is also lenient.

### IV. THE SERIOUSNESS OF MOCK'S CRIMES UNDER 18 U.S.C. § 3553(A)

The Court expressed at the original sentencing hearing that the sentence it imposed was guided primarily by its interpretation and application of the 18 U.S.C. § 3553(a) factors. Crucially, none of those factors have changed since Mock's original sentencing, so the Court should not amend Mock's sentence at all, let alone reduce it to time served. While the Supreme Court's decision in *Fischer* (and the D.C. Circuit's decision in *Brock*) has changed Mock's advisory Guidelines range, "*Fischer* does not dictate the Court's application of the 18 U.S.C. 3553(a) factors [because] the Court may still consider [defendant's] serious conduct on January 6th, 2021 in its entirety. To reduce [defendant's] sentence ... would require this Court to take a drastically different view of [defendant's] conduct." *United States v. Hostetter*, No. 21-cr-392 (RCL), ECF No. 507, at 4–5 (cleaned up).

Mock's current frustration with BOP's rejection of his release plan is not a valid basis under the Section 3553(a) factors for the Court to reduce his sentence. The statute governing placement of "convicted persons" is unequivocal that the Bureau of Prisons alone "shall designate the place of the prisoner's imprisonment" after considering certain enumerated factors. 18 U.S.C. § 3621(b). The statute then explains that "[n]otwithstanding any other provision of law, a

9

designation of a place of imprisonment under [18 U.S.C. § 3621(b)] is not reviewable by any court." *Id.* Unsurprisingly, courts have acknowledged that the decisions concerning placement of prisoners are "within the sole discretion of the Bureau of Prisons," and "[a] sentencing court has no authority to order that a convicted defendant be confined in a particular facility[.]" *United States v. Williams*, 65 F.3d 301, 307 (2d Cir. 1995).

Mock's felonious conduct on January 6, 2021, was part of a massive riot that almost succeeded in preventing the certification vote from being carried out, frustrating the peaceful transition of Presidential power. Mock spent weeks prior to January 6 stoking violence on social media. He then joined the riot at the Capitol, helped remove two police barricades, assaulted four officers, and stole two riot shields. Afterward, he expressed no remorse; instead, he bragged about his criminal conduct and justified it.

## V.    CONCLUSION

At Mock's original sentencing, the Court varied downward, assessing a sentence it believed was fair and just under the circumstances. While the government's initial recommendation diverged from that result, the Court's sentence nonetheless took into account the gravity of the crimes and the history and characteristics of the defendant. At resentencing, none of those factors have changed. Indeed, the Court's 33-month sentence is still well below the now governing guidelines, and an additional reduction is simply unwarranted. *See* ECF No. 125 at 2.

Thus, for the reasons set forth above, the government recommends that the Court reimpose a sentence of 33 months of imprisonment, two years of supervised release, $2,000 in restitution, and the mandatory $610 special assessment.

                Respectfully submitted,

                MATTHEW M. GRAVES
                UNITED STATES ATTORNEY

BY:    */s/ Michael M. Gordon*
                MICHAEL M. GORDON
                Senior Trial Counsel, Capitol Siege Section
                Assistant United States Attorney
                Florida Bar. No. 1026025
                400 N. Tampa Street, Suite 3200
                Tampa, Florida 33602-4798
                michael.gordon3@usdoj.gov
                (813) 274-6000